## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| TYLER BAKER, JENNIFER BOZUE, LAURA BROOKMAN, ERIC HEARD, EDWIN WOODBURNE, and ROBERTA WRIGHT, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX, LLC,<br><br>Defendant. | Case No. |

## PLAINTIFFS' CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, TYLER BAKER ("Baker"), JENNIFER BOZUE ("Bozue"), LAURA BROOKMAN ("Brookman"), ERIC HEARD ("Heard"), EDWIN WOODBURNE ("Woodburne"), and ROBERTA WRIGHT ("Wright") (collectively referred to as "Plaintiffs") through their attorneys, on their behalf and on behalf of all others similarly situated, bring this class action complaint and

hereby allege the following against Defendant, EQUIFAX, LLC ("EQUIFAX" or "Defendant"):

## **Introduction**

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1691, was enacted by Congress in 1970 to ensure the accuracy, fairness, and privacy of consumer information contained in the files of consumer reporting agencies. Recognizing the critical role that accurate credit reports play in consumers' financial stability and opportunities, Congress sought to establish a framework that would promote the integrity of the information used by creditors, insurers, employers, and other entities in making decisions affecting consumers' lives.

A key provision of the FCRA is the obligation it places on consumer reporting agencies to maintain the most accurate and up-to-date information possible. This provision includes the responsibility to investigate consumer disputes about the information in their credit reports. When a consumer identifies an inaccuracy or raises a dispute, the reporting agency must conduct a reasonable investigation to verify the accuracy of the contested information. This duty is essential in protecting consumers from the detrimental effects of erroneous information, such as unjust denial of credit, employment, or insurance.

By establishing these requirements, the FCRA aims to enhance consumer confidence in the credit reporting system and ensure that decisions based on credit

reports are grounded in reliable and precise data. The act reflects Congress's recognition of the significant impact that credit reports have on consumers' financial well-being and its commitment to safeguarding their rights and interests in the marketplace.

In this matter, the named Plaintiffs hope to show this Court that EQUIFAX has attempted to shirk its duty to investigate an untold number of consumer disputes under the dishonest guise that it could not locate these consumers' credit files. Additionally, and compounding the damages suffered by consumers, the letter that EQUIFAX sent each of the named plaintiffs and an unknown number of class members to inform them that it could not locate their credit file asked for information that could only be intended to dissuade these consumers from enforcing the rights provided to them by the FCRA in asking for multiple forms of documentation, specific and burdensome production instructions, and an overcomplicated request to send documentation to two different addresses. As will be made known in the following accusations and throughout this case, EQUIFAX's attempts to avoid its obligations to consumers violate the tone, direction, and purpose of the FCRA.

## <u>Nature of the Action</u>

1)      This action is brought by Plaintiffs under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, and seeks class-wide relief for unlawful and improper credit reporting procedures relating to consumer credit report disputes.

## Parties

2)      Plaintiff Baker is a natural person residing in Anoka County, in the City of Andover, in the State of Minnesota, and is otherwise *sui juris*.

3)      Plaintiff Bozue is a natural person residing in Grundy County, in the City of Gardner, in the State of Illinois, and is otherwise *sui juris*.

4)      Plaintiff Brookman is a natural person residing in Reno County, in the City of Hutchinson, in the State of Kansas, and is otherwise *sui juris*.

5)      Plaintiff Heard is a natural person residing in the City of Williamsburg, in the State of Virginia, and is otherwise *sui juris*.

6)      Plaintiff Woodburne is a natural person residing in Kane County, in the City of Elgin, in the State of Illinois, and is otherwise *sui juris*.

7)      Plaintiff Wright is a natural person residing in Logan County, in the City of Lincoln, in the State of Illinois, and is otherwise *sui juris*.

8)      Plaintiffs are "consumers" as defined by 15 U.S.C. ¶ 1681a(c).

9)      Defendant EQUIFAX is a company conducting business in every state and has its principal place of business in Atlanta, Georgia.

10)     Defendant EQUIFAX is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. § 1681a(f).

11)     Defendant EQUIFAX regularly engages in the business of assembling, evaluating, and distributing information concerning consumers, such as Plaintiffs,

for the purpose of furnishing consumer reports to third parties, as defined in 15 U.S.C. § 1681a(f).

12)      At all relevant times, Defendant EQUIFAX acted through its agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

## Jurisdiction and Venue

13)      Jurisdiction of this court arises under 15 U.S.C. § 1681p, which states that such actions may be brought and heard before "any appropriate United States district court without regard to the amount in controversy."

14)      Defendant EQUIFAX's principal place of business is in Georgia; therefore, personal jurisdiction is established.

15)      Venue is proper in the United States District Court for the Northern District of Georgia under 28 U.S.C § 1391(b), (c), and (d) because Defendant EQUIFAX is subject to personal jurisdiction within this District.

## Factual Allegations Relating to Named Plaintiffs

16)      All allegations brought by these named Plaintiffs are based in the same boilerplate form letter (the "Form Letter") that EQUIFAX sent in response to each of their individual disputes regarding inaccurate information EQUIFAX was reporting. See **Exhibit A**

17)      As will be detailed below, regardless of the information provided to

EQUIFAX in each of the disputes and regardless of the actions taken by each of these named Plaintiffs, EQUIFAX refused to investigate each of their disputes under the guise that it could not locate their credit files.

18) Each of the named Plaintiffs received the same Form Letter from EQUIFAX in response to their disputes. This Form Letter is ambiguous, confusing, and deceptive for several reasons, including but not limited to:

    a) Requesting information already provided in the dispute letters sent by all of the Plaintiffs, including:

        i)   complete name;

        ii)   current and former address;

        iii)   social security number; and

        iv)   date of birth;

    b) Demanding sensitive documents that would not aid in locating a consumer's credit file, including:

        i)   paystubs with a complete social security number;

        ii)   W-2 forms with a complete social security number; or

        iii)   a valid social security card; and

        iv)   either a driver's license; rental/lease agreement/house deed; pay stub with address, or utility bill.

    c) Requesting the information be sent to two different addresses; and

d) Requesting that each of the named plaintiffs and class members send back to Equifax the Form Letter that was sent and the original dispute letter.

e) Further, the Form Letter demanded that the original Form letter be sent back with the multitude of documents requested, making it impossible for the recipients of the Form Letter to comply with Equifax's demands.

See **Exhibit A**

19)    As evidenced by the named Plaintiffs' dispute letters, all of the personal information requested by Equifax in the Form Letter had already been provided to Equifax and was sufficient for Equifax to locate the Plaintiff's credit files.

20)    Equifax's Form Letter could have served no other purpose other than creating a hurdle for consumers to jump over in order to have their dispute investigated, with the intention of dissuading consumers from sending these disputes to EQUIFAX and, in return, allowing EQUIFAX to diminish or completely avoid its responsibility to investigate consumer disputes under the FCRA.

**Facts Pertaining to Plaintiff Tyler Baker**

21)    On or about July 14, 2022, Plaintiff Baker and Best Egg settled an account ending in 4957 for $7,058.00.

22)    Per the terms of the settlement agreement, Plaintiff Baker made eleven (11) payments of $295.00 and one (1) payment of $3,813.00, with the last and final

payment on June 20, 2023, fully satisfying the settlement agreement and Best Egg account.

23)    On March 7, 2024, Plaintiff Baker received a copy of his credit report from EQUIFAX.

24)    To Plaintiff Baker's surprise, despite his performance under the terms of the settlement agreement with Best Egg, EQUIFAX inaccurately reported the account status as "NOT_MORE_THAN_FOUR_PAYMENTS_PAST_DUE" and failed to report the payment history on this account accurately.

25)    EQUIFAX's failure to report the Best Egg account correctly, including its failure to report the accurate status and payment history, would, at the least, mislead any third-party reviewing Plaintiff Baker's credit history.

26)    In response to the inaccuracies in his credit report published by EQUIFAX, and in an effort to correct the inaccurate reporting, Plaintiff Baker sent a letter to EQUIFAX disputing various errors identified on his credit report on or about March 13, 2024.

27)    In his dispute letter, Plaintiff Baker included his full name, mailing address, previous address, date of birth, and complete social security number in the dispute letter to aid EQUIFAX in identifying him and his credit profile.

28)    Plaintiff Baker also included proof of the settlement agreement with Best Egg and the settlement payments made to Best Egg with his dispute letter.

29)    In response to Plaintiff Baker's dispute, EQUIFAX sent the Form Letter to Plaintiff Baker, which explained that they could not locate Plaintiff Baker's credit file using the information provided in his dispute letter. See **Exhibit A**.

30)    In this Form Letter, EQUIFAX requested specific information be sent to them to aid in locating Plaintiff Baker's credit file, despite the availability of this same information Plaintiff Baker included in his dispute.

31)    Upon information and belief, EQUIFAX had sufficient identifying information in Plaintiff Brookman's original dispute letter but attempted to subvert its responsibilities prescribed in 15 U.S.C. 1681(i) by sending Plaintiff the Form Letter instead of investigating her dispute and, thus, violated the FCRA for failing to conduct a reasonable investigation into Plaintiff's dispute letter.

32)    Plaintiff Baker chose not to respond to the Form Letter, giving up on the hope of having the inaccuracy investigated, and the inaccurate information continues to be reported by EQUIFAX.

## Facts Pertaining to Plaintiff Jennifer Bozue

33)    On or about March 13, 2023, Plaintiff Bozue and Fortiva Credit Card (a credit card issued by The Bank of Missouri) settled an account ending in 8803 for $597.00.

34)    Per the terms of the settlement agreement, Plaintiff Bozue made one (1) payment of $597.00 on March 27, 2023, which fully satisfied the settlement

agreement and Fortiva Credit Card account.

35)    On February 28, 2024, Plaintiff Bozue received a copy of her credit report from EQUIFAX.

36)    To Plaintiff Bozue's surprise, despite her performance under the terms of the settlement agreement with Fortiva Credit Card, EQUIFAX inaccurately reported the account rating as "CO" ("CO" meaning "Charge-Off," according to EQUIFAX) until December 2023, even though the Fortiva Credit Card account was paid and settled in March 2023.

37)    Additionally, EQUIFAX failed to report the settlement payment or an accurate payment history of the Fortiva Credit Card account.

38)    EQUIFAX's failure to report the account correctly, including its failure to report the accurate account rating and payment history, would, at the least, mislead any third-party reviewing Plaintiff Bozue's credit history.

39)    On or about March 3, 2024, in response to the inaccuracies in the credit report published by EQUIFAX, Plaintiff Bozue sent a letter to EQUIFAX disputing various errors identified on her credit report and detailed above.

40)    In her dispute letter, Plaintiff Bozue included her full name, mailing address, date of birth, and complete social security number in the dispute letter to aid EQUIFAX in identifying her.

41)    Additionally, Plaintiff Bozue included proof of the settlement

agreement with Fortiva Credit Card and the settlement payment made to Fortiva Credit Card.

42)     In response to Plaintiff Bozue's dispute, EQUIFAX sent the Form Letter to Plaintiff Bozue, which explained that they could not locate Plaintiff Bozue's credit file using the information provided in her dispute letter. See **Exhibit A**.

43)     In this Form Letter, EQUIFAX requested specific information be sent to them to aid in locating Plaintiff Bozue's credit file, despite the same information being included in Plaintiff Bozue's dispute letter.

44)     In response to the Form Letter, Plaintiff Bozue followed EQUIFAX's instructions and sent EQUIFAX a package containing all of the requested information and necessary documents, including a copy of her social security card and drivers license.

45)     However, despite her compliance with EQUIFAX's Form Letter, EQUIFAX did not conduct any investigation info Plaintiff Bozue's dispute and continues to report the same inaccuracies regarding the underlying account in question.

46)     Upon information and belief, EQUIFAX had sufficient identifying information in Plaintiff Bozue's original dispute letter but attempted to subvert its responsibilities prescribed in 15 U.S.C. 1681(i) by sending Plaintiff the Form Letter

instead of investigating her dispute and, thus, violated the FCRA for failing to conduct a reasonable investigation into Plaintiff's dispute letter.

## Facts Pertaining to Plaintiff Laura Brookman

47)     On or about January 1, 2024, Plaintiff Brookman and AvanteUSA, Ltd., acting for Kohl's, Inc., settled an account ending in 5675 for $391.69.

48)     Per the terms of the settlement agreement, Plaintiff Brookman made two (2) payments of $131.00 and (1) payment of $129.69, with the last and final payment on February 23, 2023, fully satisfying the settlement agreement between Plaintiff Brookman and Kohl's, Inc.

49)     On March 27, 2024, Plaintiff Brookman received a copy of her credit report from EQUIFAX.

50)     To Plaintiff Brookman's surprise, despite her performance under the terms of the settlement agreement with AvanteUSA, Ltd., EQUIFAX inaccurately reported the umderlying account status as "NOT_MORE_THAN_TWO_PAYMENTS_PAST_DUE" and reported the payment history of the account inaccurately in failing to report any of the payments Plaintiff Brookman had made to Kohl's.

51)     EQUIFAX's failure to report the account correctly, including its failure to report the accurate status and payment history, would, at the least, mislead any third-party reviewing Plaintiff Brookman's credit history.

52)     On or about April 2, 2024, in response to the inaccuracies in the credit report published by EQUIFAX, Plaintiff Brookman sent a letter to EQUIFAX disputing the errors identified above.

53)     In her dispute letter, Plaintiff Brookman included her full name, mailing address, previous address, date of birth, and complete social security number in the dispute letter to aid EQUIFAX in identifying him.

54)     Further, Plaintiff Brookman included proof of the settlement agreement with AvanteUSA, Ltd., and the settlement payments made to Kohl's, Inc with her dispute letter.

55)     In response to Plaintiff Brookman's dispute, EQUIFAX sent the Form Letter to Plaintiff Brookman, which explained that they could not locate Plaintiff Brookman's credit file using the information provided in her dispute letter. See **Exhibit A**.

56)     In this Form Letter, EQUIFAX requested specific information be sent to them to aid in locating Plaintiff Brookman's credit file, despite the availability of the same information Plaintiff Brookman included in her dispute letter.

57)     Because Plaintiff Brookman already provided EQUIFAX with the information requested in the Form Letter, EQUIFAX had sufficient information to locate Plaintiff Brookman's credit file—including her full name, mailing address, previous mailing address, date of birth, and complete social security number.

58)     In response to the Form Letter and in compliance with the instructions included in the Form Letter, Plaintiff Brookman went to EQUIFAX's website and used the dispute portal on EQUIFAX's website to dispute her credit report again. See **Exhibit A**.

59)     Shockingly, EQUIFAX responded explaining that Plaintiff Brookman's account was already under investigation.

60)     Plaintiff Brookman was confused, as she received the Form Letter, as explained above, which stated they could not locate her credit file.

61)     EQUIFAX's responses failed to offer any resolution to Plaintiff Bozue's dispute, and as a result, her situation remains unchanged.

62)     Even after Plaintiff Brookman's multiple disputes and EQUIFAX's "investigation" of her account, her credit report still contains inaccurate information.

63)     Upon information and belief, EQUIFAX had sufficient identifying information in Plaintiff Brookman's original dispute letter but attempted to subvert its responsibilities prescribed in 15 U.S.C. 1681(i) by sending Plaintiff the Form Letter instead of investigating her dispute and, thus, violated the FCRA for failing to conduct a reasonable investigation into Plaintiff's dispute letter.

### Facts Pertaining to Plaintiff Eric Heard

64)     In or around January 2024, Plaintiff Heard and Merrick Bank settled an account ending in 5472 for $1,434.28.

65)     Per the terms of the settlement agreement, Plaintiff Heard made one (1) payment of $1,434.28 on January 29, 2024, which fully satisfied the settlement agreement and Merrick Bank account.

66)     On March 28, 2024, Plaintiff Heard received a copy of his credit report from EQUIFAX.

67)     To Plaintiff Heard's surprise, despite his performance under the terms of the settlement agreement with Merrick Bank, EQUIFAX inaccurately reported the account status as "CHARGE_OFF" and failed to report the settlement payment Plaintiff Heard made in satisfaction of the Merrick Bank account.

68)     EQUIFAX's failure to report the account correctly, including its failure to report the accurate status and payment history, would, at the least, mislead any third-party reviewing Plaintiff Heard's credit history.

69)     On or about April 1, 2024, in response to the inaccuracies found in the credit report published by EQUIFAX, Plaintiff Heard sent a letter to EQUIFAX disputing various errors identified on his credit report.

70)     In his dispute letter, Plaintiff Heard included his full name, mailing address, date of birth, and complete social security number in the dispute letter to aid EQUIFAX in identifying him.

71)     Additionally, Plaintiff Heard also included proof of the settlement agreement with Merrick Bank and the settlement payments made to Merrick Bank

with his dispute letter.

72)     In response to Plaintiff Heard's dispute letter, EQUIFAX sent the Form Letter to Plaintiff Heard, which explained that they could not locate Plaintiff Heard's credit file using the information provided in his dispute letter. See **Exhibit A**.

73)     In this Form Letter, EQUIFAX requested specific information be sent to them to aid in locating Plaintiff Heard's credit file, despite the availability of virtually identical information Plaintiff Heard included in his dispute letter.

74)     Upon information and belief, EQUIFAX had sufficient identifying information in Plaintiff Brookman's original dispute letter but attempted to subvert its responsibilities prescribed in 15 U.S.C. 1681(i) by sending Plaintiff the Form Letter instead of investigating her dispute and, thus, violated the FCRA for failing to conduct a reasonable investigation into Plaintiff's dispute letter.

75)     As of the date of the filing of this complaint, EQUIFAX continues to report the disputed inaccurate information on Plaintiff Heard's credit file.

## Facts Pertaining to Plaintiff Edwin Woodburne

76)     In or around August 2023, Plaintiff Woodburne and Dell Financial Services/WebBank settled an account ending in 4298 for $2,202.20.

77)     Per the terms of the settlement agreement, Plaintiff Woodburne made one (1) payment of $2,202.20 on August 1, 2023, which fully satisfied the settlement agreement and Dell Financial Services/WebBank account.

78)     On March 5, 2024, Plaintiff Woodburne received a copy of his credit report from EQUIFAX.

79)     Based on information and belief, LVNV Funding, LLC, incorrectly collected on the account, even though it was already paid and settled, and an LVNV Funding, LLC, account was being reported on the EQUIFAX credit report.

80)     EQUIFAX inaccurately reported the LVNV Funding, LLC, account status as "COLLECTION" with an outstanding, past-due balance of $1,801.00. EQUIFAX also failed to update the account's payment history.

81)     EQUIFAX's failure to report the account correctly, including its failure to report the accurate status, balance, and payment history, would, at the least, mislead any third-party reviewing Plaintiff Woodburne's credit history.

82)     On or about March 10, 2024, in response to the inaccuracies in his credit report published by EQUIFAX, Plaintiff Woodburne sent a letter to EQUIFAX disputing various errors identified on his credit report.

83)     In his dispute letter, Plaintiff Woodburne included his full name, mailing address, date of birth, and complete social security number in the dispute letter to aid EQUIFAX in identifying him.

84)     Additionally, Plaintiff Woodburne also included proof of the settlement agreement with Dell Financial Services/WebBank and the settlement payments made to Dell Financial Services/WebBank with his dispute letter.

85)     In response to Plaintiff Woodburne's dispute, EQUIFAX sent the Form Letter to Plaintiff Woodburne, which explained that they could not locate Plaintiff Woodburne's credit file using the information provided in his dispute letter. See **Exhibit A**.

86)     In this Form Letter, EQUIFAX requested specific information be sent to them to aid in locating Plaintiff Woodburne's credit file, despite the availability of virtually identical information Plaintiff Woodburne included in his dispute letter.

87)     In response to the Form Letter, Plaintiff Woodburne followed EQUIFAX's instructions in their Form Letter and sent EQUIFAX a package containing all of the requested information and necessary documents.

88)     Despite his compliance with EQUIFAX's Form Letter, EQUIFAX, again, failed to conduct any investigation or any reasonable investigation to assist Plaintiff Woodburne in resolving the dispute regarding his inaccurate credit report.

89)     Moreover, EQUIFAX, in a display of either negligence or sheer disregard for Plaintiff Woodburne's time and effort, saw fit to send yet another identical Form Letter to him, redundantly demanding the same information they had previously requested.

90)     EQUIFAX's responses failed to offer any resolution to Plaintiff Woodburne's dispute, and as a result, his situation remains unchanged. His credit report still contains inaccurate information, just as it did before the initial dispute.

91)     Upon information and belief, EQUIFAX had sufficient identifying information in Plaintiff Woodburne's original dispute letter but attempted to subvert its responsibilities prescribed in 15 U.S.C. 1681(i) by sending Plaintiff the Form Letter instead of investigating her dispute and, thus, violated the FCRA for failing to conduct a reasonable investigation into Plaintiff's dispute letter.

## **Facts Pertaining to Plaintiff Roberta Wright**

92)     On or about May 24, 2023, Plaintiff Wright and Aspire (a credit card issued by The Bank of Missouri) settled an account ending in 2255 for $1,315.00.

93)     Per the terms of the settlement agreement, Plaintiff Wright made one (1) payment of $1,315.00 on June 15, 2023, which fully satisfied the settlement agreement and Aspire account.

94)     On March 7, 2024, Plaintiff Wright received a copy of her credit report from EQUIFAX.

95)     To Plaintiff Wright's surprise, despite her performance under the terms of the settlement agreement with Aspire, EQUIFAX inaccurately reported the account rating as "CO" ("CO" meaning "Charge-Off," according to EQUIFAX) until January 2024, even though the Aspire account was settled and paid in June 2023.

96)     EQUIFAX's failure to report the Account correctly, including its failure to report the accurate rating, would, at the least, mislead any third-party

reviewing Plaintiff's credit history.

97)    On or about March 11, 2024, in response to the inaccuracies in the credit report published by EQUIFAX, Plaintiff Wright sent a letter to EQUIFAX disputing various errors identified on her credit report.

98)    In her dispute letter, Plaintiff Wright included her full name, mailing address, date of birth, and complete social security number in the dispute letter to aid EQUIFAX in identifying her.

99)    Plaintiff Wright also included proof of the settlement agreement with Aspire and the settlement payments made to Aspire with her dispute letter.

100)   In response to Plaintiff Wright's dispute, EQUIFAX sent the Form Letter to Plaintiff Wright, which explained that they could not locate Plaintiff Wright's credit file using the information provided in her dispute letter. See **Exhibit A**.

101)   In this Form Letter, EQUIFAX requested specific information be sent to them to aid in locating Plaintiff Wright's credit file, despite the availability of the same information Plaintiff Wright included in her dispute letter.

102)   Because Plaintiff Wright already provided EQUIFAX with the information requested in the Form Letter, EQUIFAX had sufficient information to locate Plaintiff Wright's credit file—including her full name, mailing address, previous mailing address, date of birth, and complete social security number.

103)    In response, Plaintiff Wright followed EQUIFAX's instructions in their Form Letter and sent EQUIFAX a package containing all of the requested information and necessary documents.

104)    Despite her compliance with EQUIFAX's Form Letter, EQUIFAX, again, failed to conduct any investigation or any reasonable investigation to assist Plaintiff Wright in resolving the dispute regarding her inaccurate credit report.

105)    Moreover, EQUIFAX, in a display of either negligence or sheer disregard for Plaintiff Wright's time and effort, saw fit to send yet another identical Form Letter to her, redundantly demanding the same information they had previously requested.

106)    EQUIFAX's responses failed to offer any resolution to Plaintiff Wright's dispute, and as a result, her situation remains unchanged. Her credit report still contains inaccurate information, just as it did before the initial dispute.

107)    Upon information and belief, EQUIFAX had sufficient identifying information in Plaintiff Wright's original dispute letter but attempted to subvert its responsibilities prescribed in 15 U.S.C. 1681(i) by sending Plaintiff the Form Letter instead of investigating her dispute and, thus, violated the FCRA for failing to conduct a reasonable investigation into Plaintiff's dispute letter.

/ / /

/ / /

## Facts Pertaining to All Plaintiffs

108)    Per 15 U.S.C. § 1681i(a)(1)(A), upon receipt Plaintiffs' dispute letters, EQUIFAX was required to re-investigate the disputes free of charge and either 1) record the current status of the disputed information or 2) delete the disputed items from the files, within thirty (30) days of receiving notice from Plaintiffs.

109)    EQUIFAX failed to re-investigate, record the current status of the disputed information, or delete the items from Plaintiffs' files within thirty (30) days.

110)    Instead, EQUIFAX responded to Plaintiffs' disputes with the Form Letter, in which EQUIFAX stated it could not locate Plaintiffs' files. It further requested additional burdensome documents, and it ultimately required Plaintiffs to re-dispute all over again.

111)    Further, EQUIFAX's request placed a higher burden on the Plaintiffs than contemplated under the FCRA by requested numerous sensitive documents that provided no more information than what was already included in the Plaintiffs' dispute letters.

112)    Plaintiffs provided EQUIFAX with reasonable and sufficient information to locate their credit files.

113)    Expressly, Plaintiffs provided, at a minimum, their full name, mailing address, date of birth, and complete social security number.

114)    Additionally, the additional documents requested by EQUIFAX do not

provide any additional information not already provided by Plaintiffs.

115) Therefore, EQUIFAX's failure to comply with 15 U.S.C. § 1681i(a)(1)(A) was unreasonable since the information provided by Plaintiffs was entirely adequate.

116) As a result of EQUIFAX's actions and overburdensome requests, Plaintiffs, along with potentially thousands of others, have failed to obtain adequate reinvestigation into inaccurate information on their credit files.

## **Factual Allegations Relating to Defendant EQUIFAX's Practices in General**

117) EQUIFAX regularly and frequently receives dispute letters from consumers nationwide.

118) In their dispute correspondence, consumers frequently provide a subset of information to EQUIFAX to aid EQUIFAX in locating the correct consumer files.

119) This information includes but is not limited to, names, addresses, dates of birth, and full or partial social security numbers.

120) Despite being able to locate consumer files using the provided information, EQUIFAX subsequently requires consumers, via the Form Letter, to provide an unreasonable amount of personal information so that EQUIFAX can continue to pursue the dispute process in the hopes that consumers will fail to respond.

121) Further, EQUIFAX instructs consumers in the Form Letter to send the

requested information to two different addresses, which adds an additional level of difficulty for the consumer in determining which address provided by EQUIFAX to mail the requested information.

122) EQUIFAX's actions have constructed an extra-statutory obligation and hurdle, not required by the FCRA, which it imposes on consumers to reduce the number of disputes to which it is required to respond under the FCRA and thereby avoid costs and liability in complying with the FCRA's obligations.

123) EQUIFAX's actions have effectively and unreasonably placed a chilling effect on consumers' ability to seek redress and vindication under the FCRA unless they respond to EQUIFAX's patently unreasonable production demands.

## <u>CLASS ACTION ALLEGATIONS</u>

124) The above named Plaintiffs bring this claim on behalf of a class pursuant to Fed. R. Civ. P. 23(a) and 23(b)(3).

125) The class consists of all individuals nationwide who, within two years of the filing of this complaint and through the certification of this class, received the Form Letter from EQUIFAX after sending dispute letters to EQUIFAX.

126) The class is so numerous that joinder of all members is not practical.

 i) Plaintiff's attorneys are aware of at least sixty-three (63) additional consumers that have received Equifax's Form Letter in response to their dispute letters.

127)     On information and belief, there are likely thousands of additional class members where EQUIFAX sent out its Form Letter instead of conducting a reasonable investigation into the dispute.

128)     There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The common questions are:

a) Whether EQUIFAX unreasonably determines that, at a minimum, a full name, address, date of birth, and full or partial social security number are insufficient to locate a consumer's credit file;

b) Whether EQUIFAX had sufficient information contained within the consumers' disputes to locate the consumers' respective credit profile;

c) Whether EQUIFAX failed to conduct a reasonable investigation into the consumers' disputes that received EQUIFAX's Form Letter; and

d) Whether EQUIFAX failed to follow reasonable procedures to ensure the maximum possible accuracy of class participants' credit profile(s)

129)     Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

130)     Plaintiffs will fairly and adequately represent the class members.

Plaintiffs have retained counsel experienced in consumer protection litigation and the resources necessary to pursue class relief.

131)    A class action is superior for the fair and efficient adjudication of this matter in that:

     a)  Individual actions are not economically feasible;

     b)  Members of the class are likely to be unaware of their rights;

     c)  Congress intended class actions to be an integral enforcement mechanism under the FCRA.

## FIRST CAUSE OF ACTION
## DEFENDANT EQUIFAX VIOLATED THE FCRA *15 U.S.C. § 1681 et seq.*

132)    Plaintiffs repeat and incorporate by reference into this cause of action the allegations set forth above.

133)    EQUIFAX's violations of the FCRA include, but are not limited to, the following:

     a)  EQUIFAX violated *§1681i(a)(1)(A)* of the FCRA by failing to reinvestigate free of charge <u>and</u> either:

         i.   Record the current status of disputed information; or

         ii.  Delete the disputed information from Plaintiffs' files after being reasonably notified by Plaintiffs of the incompleteness or inaccuracy of the information reported.

b) EQUIFAX's violated 15 U.S.C. § 1681e(b) for willfully or negligently failing to employ and follow reasonable procedures to assure maximum possible accuracy of Plaintiff's credit report, information and file.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs pray that judgment be entered against EQUIFAX on behalf of themselves and the class for the following:

a. Defendant EQUIFAX's conduct, action, and inaction were willful, rendering Defendant liable to Plaintiffs under 15 U.S.C. § 1681n for:

  i. Statutory damages of $1,000 for Plaintiffs and each class member pursuant to 15 U.S.C. § 1681n(a)(1)(A);

  ii. Punitive damages as the Court may allow pursuant to 15 U.S.C. § 1681n(a)(2); and

  iii. Reasonable attorneys' fees and costs pursuant to 15 U.S.C. § 1681n(a)(3).

b. In the alternative, Defendant EQUIFAX was negligent, rendering Defendant liable to Plaintiffs under 15 U.S.C. § 1681o for:

  i. Actual damages sustained by Plaintiffs as a result of the failure pursuant to 15 U.S.C. § 1681o(a)(1); and

      ii. Reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1681o(a)(2).

c. Awarding such other and further relief as may be just, proper, and equitable.

## <u>JURY TRIAL DEMAND</u>

Plaintiffs demand a jury trial on all issues so triable.


Dated:      September 6, 2024      Respectfully submitted,

              By:   <u>/s/ Mark Carey</u>
                    Mark A. Carey
                    Gator Law
                    2 North Central Avenue, Suite 1800
                    Phoenix, AZ 85004
                    Tel: (385) 324-5471
                    Email: <u>*attorneys@gatorlawpc.com*</u>
                    Attorneys for Plaintiffs